MANNING CURTIS BRADSHAW
  & BEDNAR PLLC
Kathleen W. Toth, #8437
James E. Ji, #12352
136 East South Temple, Suite 1300
Salt Lake City, Utah 84111
Telephone: (801) 363-5678
Facsimile: (801) 364-5678
ktoth@mc2b.com
jji@mc2b.com
*Attorneys for Defendant Walmart Stores, Inc.*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| SHAWN H. RAY, an individual; GABRIEL M. STEWART, an individual; LORI POULSEN, an individual; JAMES DALLIN, an individual; DEREK HOLT, an individual; and ERIC HUNTER, an individual;<br><br>Plaintiffs,<br><br>- vs -<br><br>WAL-MART STORES, INC., a Utah Corporation,[1]<br><br>Defendant. | **DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SPOLIATION SANCTIONS AGAINST PLAINTIFFS DEREK HOLT AND SHAWN RAY**<br><br>Case No. 1:11-cv-00104-RJS<br><br>Judge Robert J. Shelby |

Defendant Walmart Stores, Inc. ("Walmart" or "Defendant"), by and through its undersigned counsel, submits this Reply in support of Defendant's Motion for Spoliation Sanctions against Plaintiffs Derek Holt and Shawn Ray (the "Motion") (ECF Doc. #141).

---

[1] The caption to Plaintiffs' Complaint incorrectly states that Walmart Stores, Inc. is a Utah corporation. Walmart Stores, Inc. is a Delaware corporation.

## INTRODUCTION

Plaintiffs Derek Holt ("Holt") and Shawn Ray ("Ray") are two of five Plaintiffs who have filed suit against Walmart for wrongful termination in violation of public policy. Specifically, Plaintiffs contend that Walmart terminated their employment for conduct that, according to Plaintiffs, was an exercise of their right to self-defense.

In its opening Memorandum, Walmart demonstrated the grounds for entering spoliation sanctions against Holt and Ray. Specifically, Holt "shredded" his training binder, which documented Holt's training history (including his record of attendance) at Walmart; and Ray permanently deleted his Facebook account after Walmart requested Facebook information in its discovery requests to Ray. Holt and Ray destroyed this critical evidence while this lawsuit was pending and discovery was ongoing.

In Holt and Ray's Opposition, they do not dispute destroying this key evidence. Instead, they merely offer various excuses and implausible, non-credible stories for why they should not be sanctioned for their clear and egregious discovery abuses. Holt and Ray also falsely claim that they and their counsel have been "harassed and intimidated" during the discovery process because of Walmart's discovery demands. These excuses are an attempt to deflect the Court's attention away from Holt and Ray's intentional conduct and are not grounds for denying Walmart's Motion. Indeed, Holt and Ray's Opposition only further demonstrates their willingness to be untruthful, and to say anything that they believe will advance their interests in this case. Thus, Walmart respectfully requests that Holt, Ray and their attorneys be sanctioned as outlined in Walmart's opening Memorandum.

# ARGUMENT

## I.   HOLT SHOULD BE SANCTIONED FOR INTENTIONALLY SHREDDING HIS AP TRAINING BINDER WHILE THIS LAWSUIT WAS PENDING.

In his Opposition, Holt attempts to excuse his shredding of his AP training binder by arguing that: (1) he did not have a duty to preserve this evidence at the time he destroyed it; (2) his destruction of this evidence is not prejudicial to Walmart; (3) he did not manifest willful misconduct or bad faith; and (4) he did not impede the judicial process.  *See* ECF Doc. #146, Holt and Ray's Opposition to Walmart's Motion for Spoliation Sanctions ("Pls.' Opp'n") 37-44.  None of these arguments saves Holt from sanctions for his clear spoliation of evidence.

First, in an attempt to overcome his duty to preserve evidence, Holt makes the argument that he shredded his AP training binder sometime <u>before</u> he retained his attorney on February 14, 2011.  *Id.* at 37-38.  However, Holt's Facebook communications with Mr. Trudo, <u>dated June 10, 2011</u> (which is after the Complaint was filed on May 27, 2011), unequivocally demonstrate that Holt had not destroyed his AP training binder as of June 10, 2011:

> Derek Holt:    "ya and My training book isn't even signed off so they [Wal-Mart] will have a hard time saying I was trained **oh and <u>I have</u> my sign off book that is suppost to be in my personnel file hahaha**
> …
> Scott Trudo:   "what will they [Wal-Mart] say when your lawyer asks them for your sign off information"
> …
> Derek Holt:    "**haha ya I don't know sense <u>i have</u> it hahhaha**"
> Scott Trudo:   "did you tell your lawyer that"
> Derek Holt:    "**no I didnt tell her <u>i have</u> it** but she knows we are suppost to have them in our personnel files"
> Scott Trudo:   "make sure she asks for yours"
> Derek Holt:    "**haha** ya i will"
> Scott Trudo:   "how did you get your out"
> Derek Holt:    "I never turned it into personell I had it in the ap office sense it wasnt signed off"
> Derek Holt:    "so when I collected my crap **I took it**"

{01237852.DOC /}                                     1

ECF Doc. #141, Walmart's Memorandum in Support of Motion for Spoliation Sanctions ("Def.'s Mem.") at Ex. H, Holt Facebook Excerpts (emphasis added). In addition to repeatedly stating "I <u>have</u>" the training binder, just as tellingly, Holt never said anything to Mr. Trudo about having shredded the binder. In his Facebook conversation, Holt is laughing about Walmart not knowing that he took his training binder, and surely he would have told Mr. Trudo – and likely joked about it as well – that he had shredded his binder too.

In Holt's affidavit submitted with his Opposition, in an attempt to evade sanctions, Holt attempts to concoct the following explanation for his above statements:

> When I told Scott Trudo that "I had" the binder, I was making a general reference to the fact that I knew at that time that Wal-Mart did not have my binder. I didn't mean that I had the binder literally in my personal possession at that time.

ECF Doc. #147, Affidavit of Derek Holt ("Holt Aff.") ¶ 20.[2] Once again, Holt is being untruthful. Specifically, in those same June 10, 2011 Facebook communications with Mr. Trudo, Holt demonstrated that he had not yet shredded his CD of the surveillance video (which he also took from Walmart upon his termination):

> Scott Trudo: "if [sic] the video you pulled before you left able to be used or not"
> Derek Holt: "she [Attorney Brown] is going to subpoena the video so if they do not produce it **then we can use mine**"

Def.'s Mem. at Ex. H, Holt Facebook Excerpts (emphasis added). Yet, according to Holt's affidavit, <u>he shredded the CD and training binder at the same time</u> – *i.e.*, when he was supposedly "cleaning out" his car. Holt Aff. ¶ 27 ("I disposed of the training binder, <u>with the other</u>

---

[2] Contrary to the implication in ¶ 20 of Holt's affidavit, Walmart has never contended that Holt's Facebook communications with Mr. Trudo mean that Holt "had the binder literally in [his] personal possession at that time." Whether or not the binder was literally in his possession as he was communicating with Mr. Trudo is irrelevant. Instead, those communications prove that Holt had not yet destroyed his AP training binder, which he intentionally "shredded" while this lawsuit was pending.

documents that sat in my car, to clean my car out…..") (emphasis added); Ex. 1, Excerpts of Dep. of Derek Holt ("Holt Dep.") 105 -107, 110 (testifying that surveillance video CD was one of the documents he shredded when he cleaned out his car). Will Holt now contend that he did not actually have a copy of the CD, despite telling Mr. Trudo that his attorney "can use mine"?

Holt's continuing untruthfulness on this issue is perfectly consistent with his approach throughout discovery, including committing perjury in his discovery responses and then later trying to excuse his actions by testifying: "Well, I read through them and I obviously gave the answer, but I didn't like sit and read through every single one of them to make sure they were right." Ex. 1, Holt Dep. 140 -141 (emphasis added).

Second, Holt argues that Walmart is not prejudiced by his spoliation of evidence because Walmart supposedly has already "produced Holt's training materials twice to Plaintiff." Pls.' Opp'n 2 (emphasis removed), 7.[3] However, it is undisputed that Holt's AP training binder is not included in those materials. Walmart has not produced them because Holt destroyed his training records. As a result, Walmart cannot prove that Holt attended training sessions, particularly those sessions that focused on how to react and what to do in situations where a suspect becomes violent, threatens violence, or brandishes a weapon. Further, even assuming that Walmart may be able to piece together evidence of some of the trainings that Holt attended, this does not excuse Holt from intentionally destroying his irreplaceable AP training binder. Holt's training binder is the only record that conclusively shows the training that Holt received. Moreover, this

---

[3] Curiously, Holt attaches training records for his five co-Plaintiffs. *See* Pls.' Opp'n at Exs. C-E, G-H. However, the training records of the other Plaintiffs do not establish the training that Holt received. To the contrary, those records only further highlight the need for Holt's AP training binder. Holt's training materials (Ex. F) do not contain many of the trainings reflected in the other Plaintiffs' training records (Exs. C, D, E, G, H), but Holt should have completed many of those same trainings. However, without Holt's training binder, Walmart is unable to show the training sessions that Holt attended and the specific training that he received.

evidence is entirely relevant to whether Holt, given the specific training he received from Walmart regarding suspects who become violent or brandish a weapon, could <u>reasonably</u> believe that force was necessary to defend against an imminent threat of serious bodily harm.

Finally, with respect to Holt's third and fourth arguments, those arguments simply have no merit whatsoever. As demonstrated in Walmart's opening Memorandum, and by Holt's continuing untruthfulness as demonstrated above, Holt has shown the utmost "willfulness" and "bad faith" in his abuses of the judicial process. Holt's impeding of the judicial process is self-evident and, indeed, it is the entire reason for this Motion.

## II.  RAY SHOULD BE SANCTIONED FOR PERMANENTLY DELETING HIS FACEBOOK ACCOUNT SHORTLY AFTER HIS SOCIAL MEDIA RECORDS BECAME THE SUBJECT OF DISCOVERY REQUESTS IN THIS LAWSUIT.

In his Opposition, Ray claims that he could not recall exactly when he deleted his Facebook account or that he knew he was permanently deleting his account. Pls.' Opp'n 30-33. However, in his deposition, Ray confirmed that he had explained to his lawyer that he had closed his Facebook account "in July 2011" and that explanation was correct. Ex. 2, Excerpts of Dep. of Shawn Ray ("Ray Dep.") 13.[4] Ray also testified that he knew he was deleting his Facebook account. He stated, under oath, "I went to Facebook and just told them I wanted to stop. And they said, 'If you click on this' – gave you instructions on how to delete your thing and we just deleted it." *Id*. at 16. When he was asked when he deleted his Facebook page, Ray testified: "Sometime in July." *Id.* at 17. Although Ray testified he could not recall the exact date, he said it was within the first two weeks of July (when he started the Police Academy). *Id.* at 18-21:

---

[4] Ray attempts to portray Walmart's counsel as having pressured and bullied him into giving certain damaging answers at his deposition. This portrayal has no basis, and Walmart has attached the entire portion of his deposition transcript that is at issue on this Motion. *See* Ex. 2, Ray Dep. 10-42. Similarly, Plaintiffs' counsel's baseless allegation that Walmart has allegedly interfered with and abused discovery is of no merit and is meant only to distract the Court's attention from the real discovery abuses in this case.

**Q:** You said during the first couple of weeks of the police academy you attended class on social media; correct?

**A:** Um-humm.

**Q:** And during that time, they advised you—the police academy advised you to get rid of your social media sites; is that correct?

**A:** Yeah. They said it would be in your best interest not to have those—to not be a part of those, so—

**Q:** Did they require it?

**A:** No.

**Q:** Okay.

**A:** It wasn't a requirement, it was a suggestion.

**Q:** Okay. As a result of that suggestion, what did you do?

**A:** Deleted the account.

. . .

**Q:** Okay. And so you sent an e-mail to Facebook; is that correct?

**A:** It's a link that you click on, and it corresponds with e-mail. It asks why you don't want to be a part of Facebook, and then it sends you a link to delete the account.

**Q:** Okay. So you went through that process; is that correct?

**A:** Yes.

**Q:** Okay. And you did that in July of 2011?

**A:** Yeah.

. . .

**Q:** Okay. And to be certain, you did not sign back in within 15 days, so at that point, it's your testimony it was permanently deleted?

**A:** Yes, as far as my knowledge.

In his Affidavit, Ray testified that he permanently deleted his Facebook account in September or November 2011, which is <u>shortly after Wal-Mart served discovery requests on Plaintiffs seeking social media information</u>.  *See* ECF Doc. #148, Affidavit of Shawn Ray ("Ray Aff.") ¶¶ 15-18.  So, in his deposition, Ray testified that he deleted his Facebook page in July 2011.  However, selectively produced conversations from Ray's Facebook account are date-stamped September 17, 2011.  *See* Def.'s Mem. at Ex. O.  Now, Ray has changed his testimony in his Affidavit and asserted that he deleted his Facebook page in September or November 2011, which is still <u>after</u> Walmart served Ray with discovery requests in August 2011 asking for his Facebook login and password information.  *See id.* at 16, ¶ 24.

In his Opposition, Ray makes the same four arguments as Holt; however, rather than argue that he had no duty to preserve, Ray argues that he did not breach his duty to preserve because he destroyed that evidence, believing that his Facebook records would always be available and "only *after* he had copied all relevant emails and posts and submitted them to Defendant."  Pls.' Opp'n at 6-7.  Also, although he admits to choosing the option to "permanently delete" his Facebook account, Ray contends: "Everyone always tells me that once you post something on the internet that its [sic] around forever.  How was I supposed to know that by deactivating my Facebook account, that everything on that account would be wiped out of existence forever?"  Ray Aff. ¶ 21; *see also id.* at ¶ 20 ("I thought there would still be some trace of it, at least to show the dates the account was opened and closed.").

Ray's excuses should be rejected.  First, Ray is not entitled to selectively pick-and-choose what evidence he deems to be relevant to his claims, and then destroy everything else.  *See* Def.'s Mem. 8 n. 13 and cases cited.  Indeed, Plaintiffs' counsel has now fully admitted (as they must)

that their clients failed to produce numerous relevant Facebook records in response to Walmart's discovery requests for social media information.  *See* Pls.' Opp'n 29-30, ¶ 30.  There is also no merit to Ray's excuse that, although he chose the option to "permanently delete" his Facebook account, he supposedly believed that somewhere in this world a residual copy of his Facebook postings must exist.  Ray repeatedly testified that he knew that he was "deleting" (not just "deactivating") his Facebook account.  *See* Ray testimony cited *supra*.[5]

With respect to the issue of prejudice, a spoliator "cannot reap the benefits of its actions by stating that there is no evidence of relevance when it destroyed the very evidence needed to make such a determination."  *Philips Elec. N.A. Corp. v. BC Tech.*, 773 F.Supp.2d 1149, 1157 (D.Utah 2011); *see also id.* at 1200 n. 33 ("The argument of an accused spoliator that it did not violate its duty to preserve evidence because it retained the 'relevant' information and only deleted 'irrelevant' information rings particularly hollow.  The ultimate decision of what is relevant is not determined by a party's subjective assessment filtered through its own perception of self-interest.") (citation omitted).  As demonstrated by the Facebook records that Walmart subpoenaed for the other Plaintiffs, Ray's Facebook records could have been used to establish the events of the incident in question; to impeach Ray's and the other Plaintiffs' credibility; or to counter Ray's claim of damages for emotional distress.

Finally, Ray has demonstrated "willfulness," "bad faith," and interference with the judicial process.  Ray has now admitted that he permanently deleted his Facebook account just shortly after Walmart made Plaintiffs' social media records a subject of discovery.  *See* Ray Aff.

---

[5] Also, Facebook's options for "deactivation" versus "permanent deletion" are explained in the Help Center of Facebook's website.  *See* Def.'s Mem. at Ex. W, Printouts of Facebook Website.  As that Help Center explains: "If you … would like your account deleted, keep in mind that you will not be able to reactivate your account or retrieve any of the content or information you have added.  If you would like your account **permanently deleted with no option for recovery**, log in to your account and then submit your request here."  *Id.* (emphasis in original).

¶¶ 15-18. Ray's response of immediately destroying that evidence is inexcusable, and evidences culpable conduct. Further, in his deposition, Ray concocted an explanation (*i.e.*, that he deleted his Facebook account in July 2011) that was contradicted by undisputed evidence, and that he has now retracted by stating that he deleted his account in September or November 2011.

### III. SANCTIONS AGAINST PLAINTIFFS' COUNSEL IS APPROPRIATE BECAUSE THEY FAILED TO ADEQUATELY SUPERVISE THEIR CLIENTS.

Plaintiffs' counsel argue that they share no responsibility for their clients' egregious discovery abuses because they supposedly had no knowledge of those abuses. Plaintiffs' counsel's "defense of ignorance" only further demonstrates that they failed to adequately oversee their clients' discovery in this case. *See Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 431-32 (S.D.N.Y. 2004) ("Proper communication between a party and her lawyer will ensure (1) that all relevant information (or at least all sources of relevant information) is discovered, (2) that relevant information is retained on a continuing basis; and (3) that relevant non-privileged material is produced to the opposing party."); *Metro. Opera Assoc., Inc. v. Local 100, Hotel Employees and Restaurant Employees Int'l Union*, 212 F.R.D. 178, 220-24 (S.D.N.Y. 2003) ("Counsel had an affirmative duty under Rule 26(g) to make a reasonable inquiry into the basis of their discovery responses and to stop and think about the legitimacy of [those responses].").

Significantly, Holt's and Ray's affidavits do not contain any statement that they received any instruction whatsoever from their counsel concerning their obligation to preserve evidence. Indeed, those affidavits indicate the exact opposite. Holt Aff. ¶ 39 ("*I had no idea* that throwing away my training binder before we even started this lawsuit would in any way jeopardize my case, *until [Walmart's counsel] started asking me question about it in my deposition*.") (emphasis added); Ray Aff. ¶¶ 28 ("In fact, *we never discussed my social media accounts,* except so far as

to identify which accounts I had, at the time we received discovery requests regarding social media."), 29 ("*I have never discussed closing my Facebook account with my attorney*."), 37 ("*I was acting in this matter entirely on my own, without consulting with my attorney*, and did not realize that closing my account would be any problem.") (emphasis added).

Finally, as Holt's and Ray's affidavits assert, they are not "very sophisticated" with respect to the legal process. This is no excuse for Plaintiffs or their counsel; to the contrary, it shows that Plaintiffs' counsel should have been far more diligent and proactive in supervising their clients and preventing these discovery abuses from occurring.

## CONCLUSION

For these reasons, Walmart respectfully moves the Court for an Order: (a) determining that Plaintiffs Holt and Ray despoiled evidence; and (b) sanctioning Holt and Ray with dismissal of their claims (or, in the alternative, with adverse inference jury instructions). Walmart also moves for monetary sanctions against Ray, Holt, and/or their counsel, as well as for any other relief determined by the Court to be appropriate under the circumstances.

DATED: December 14, 2015.

        MANNING CURTIS BRADSHAW
          & BEDNAR PLLC

        **/s/ Kathleen W. Toth**

        Kathleen W. Toth
        James E. Ji

        *Attorneys for Defendant Walmart Stores, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of December, 2015, I served true and correct copies of the foregoing **DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SPOLIATION SANCTIONS AGAINST PLAINTIFFS DEREK HOLT AND SHAWN RAY** upon the following counsel of record, in the manner indicated below:

| | |
|---|---|
| \_\_\_Hand Delivery | Lorraine P. Brown |
| \_\_\_U.S. Mail | UTAH LEGAL ADVOCATES, LLC |
| \_\_\_Overnight Mail | P.O. Box 150848 |
| \_\_\_Fax Transmission | Ogden, UT 84415 |
| \_\_\_E-Mail Transmission | Telephone: (801) 643-3832 |
| \_x\_USDC ECF Transmission | Facsimile: (801) 754-8711 |
| | Email: lbrown@utahlegaladvocates.com |

          **/s/ Kathleen W. Toth**

{01237852.DOC /}